**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 562 |
| | ) | Judge Robert W. Gettleman |
| ALLA ISHKIRAT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE OR IN THE**
**ALTERNATIVE FOR AN EVIDENTIARY HEARING**

Defendant, **Alla Ishkirat,** by and through his attorneys, Cheronis & Parente LLC, requests that the Court dismiss the indictment with prejudice, or, in the alternative, permit discovery and conduct an evidentiary hearing regarding the government's significant misconduct in the grand jury.

**I.    Introduction**

On September 11, 2025, a federal grand jury returned an indictment charging Alla Ishkirat with arson, in violation of 18 U.S.C. § 844(i). See Dkt. 1. The charge arises from a fire at a supermarket that occurred on May 31, 2018, on Chicago's west side. The government alleges that Mr. Ishkirat, whose father owned the business, conspired with another individual and the actual arsonists to set fire to the property. Mr. Ishkirat has pleaded not guilty. The prosecutor responsible for presenting the matter to the grand jury was Assistant United States Attorney A ("AUSA A").

The history of the grand jury proceedings in this case is unusual. The matter was initially presented before the Special May 2021 Grand Jury by AUSA A, but using a grand jury number indicating the investigation was opened in 2014. On October 18, 2022, AUSA A presented a single

witness to the Special May 2021 Grand Jury. More than a month later, on November 21, 2022, AUSA presented additional evidence regarding the same case to a different grand jury, the Special May 2022 Grand Jury. The Special May 2022 grand jury subsequently received testimony from a case agent on January 23, 2023. A final witness testified before the Special May 2022 Grand Jury on July 24, 2023.

Following the July 2023 presentation, the grand jury lay dormant as to this case for two years. The matter was not revived until it was presented to the Special June 2024 Grand Jury by AUSA A, who has been the subject of recent troubling reports about her Grand Jury practice resulting in the dismissal of multiple indictments in this District. During these proceedings, AUSA A read portions of prior grand jury testimony into the record and presented testimony from an additional witness. As demonstrated below, AUSA A committed multiple acts of prosecutorial misconduct during the grand jury proceedings in this case that are similar to at least two other cases before the same grand jury.[1]

### A. AUSA A's Significant Misconduct Comes to Light in Broadview Six Case.

On May 21, 2026, it became publicly known that AUSA A engaged in extraordinary and deeply troubling misconduct during the grand jury proceedings in *United States v. Rabbitt, et al.*, Case No. 25 CR 693 (the "Broadview Six" case). As revealed by the unredacted grand jury transcripts, AUSA A improperly vouched for witnesses and the government's case, engaged in *ex parte* communications with grand jurors outside the presence of the grand jury room, and improperly excused grand jurors who expressed disagreement with the government's theory of prosecution after listening to the government's entire presentation.

---

[1] AUSA A was the lead government attorney on this case from the date of the indictment until February 25, 2026, when a motion to substitute was filed. (Dkt. 54).

It was also revealed that the United States Attorney's Office was on notice of the potential misconduct by AUSA A since at least October 2025.[2]

AUSA A's documented misconduct strikes at the heart of the grand jury's independence and undermines the integrity of the charging process itself. Equally troubling, once the U.S. Attorney's Office became aware of AUSA A's misconduct, instead of notifying the court and defense counsel, they attempted to obscure the misconduct. To that end, the government dismissed the felony charge and used other maneuvers to avoid turning over the transcripts that eventually exposed the misconduct, including turning over redacted and sterilized versions of the grand jury transcripts for in camera inspection.

Eventually, the court ordered the government to produce the unredacted transcripts, which finally exposed AUSA A's misconduct in the grand jury, leading to Judge Perry stating, "I will say that I was incredibly shocked by the redactions that were made. I have read hundreds, if not thousands, of grand jury transcripts involving prosecutors who are the most junior of prosecutors to several U.S. Attorneys who appeared before the grand jury. I have never seen the types of prosecutorial behavior before a grand jury that I saw in those transcripts. At a high-level summary for the defendants, who do not have the benefit of having seen the transcripts yet, several potential issues jumped out at me immediately and glaringly. First, improper prosecutorial vouching to the grand jurors, with the AUSA putting her personal credibility and trustworthiness on the line in support of the charges. Second, improper prosecutorial communications of a substantive nature with the grand jurors outside of the grand jury room. And, third, the prosecutor excusing grand

---

[2] Upon information and belief, the United States Attorney's Office was on notice of AUSA's misconduct prior to that date, and likely prior to the presentment of the indictment in this case, and the discovery requests are directed, in part to that issue.

jurors who disagreed with the government's case from the deliberations process." *USA v. Rabbit et al.*, 25 CR 693 N.D.I.L, pp. 22-23, J. Perry).

The transcripts themselves reveal a troubling series of vouching and rapport cultivation as exhibited by the following:

> MS. MECKLENBURG: Yes. This is a very interesting case. It's a little different. I purposely asked if I could wait for the Thursday grand jury. I did. Matt will vouch for me. I said I want to go in front of the Thursday grand jury because I know you and I trust you and you know me and you trust me, and I would never ask you to charge somebody if I didn't think there was probable cause and you know you've asked me before "Well, what about this person?" And I said "I don't charge people unless I'm absolutely sure."[3]

This statement should give this Court pause as to the legitimacy of every indictment returned by this grand jury.

**B. Misconduct Alleged in Loretto Hospital Case.**

The misconduct uncovered in the Broadview Six case was not an isolated incident regarding AUSA A's misconduct in the grand jury. Rather, it appears to have been part of a pattern of misconduct by AUSA A. Because of the inherent secrecy regarding grand jury practice, the true extent of AUSA A's misconduct in the grand jury is still not fully known by either the government or the defense bar. Similar allegations of grand jury misconduct have been identified in at least two other cases prosecuted by AUSA A: *United States v. Ahmed, et al.*, No. 24-CR-232 (N.D. Ill.) ("Ahmed I"), and *United States v. Ahmed, et al.*, No. 25-CR-321 (N.D. Ill.) ("Ahmed II"). See *Ahmed II*, Dkt. 100 at 23–24, and there are both internal and external investigations currently occurring in multiple other cases handled by AUSA A.

---

[3] This may in fact be a reference to the present case.

4

In *Ahmed II*, the defendants filed a comprehensive motion to dismiss, alleging pervasive misconduct during the grand jury proceedings. Rather than defend the propriety of its conduct at an evidentiary hearing, the government moved to dismiss the indictment with prejudice. As in the Broadview Six case, a prosecution collapsed once serious questions were raised regarding the integrity of the grand jury process.

The significance of these events cannot be overstated. The grand jury that returned the indictments in both the Broadview Six and *Ahmed II* cases is the very same grand jury (presented by AUSA A) that heard and returned the indictment against Mr. Ishkirat. It is the same grand jury with which AUSA A openly cultivated an improper rapport, the same grand jury that AUSA A claimed "trusted" her, and the same grand jury before which misconduct has now been documented in multiple unrelated prosecutions. What initially appeared to be an aberration tied to high-profile cases appears to have been a recurring practice that infects even garden-variety federal prosecutions. The evidence suggests that misconduct by AUSA A before at least this grand jury was not the exception—it was the rule.

## C. Impact on the Present Case

Following the public disclosure of the misconduct in the Broadview Six case, the United States Attorney's Office reportedly undertook a review of AUSA A's pending and prior prosecutions. That review precipitated the collapse of the Loretto prosecutions. On June 10, 2026, the government produced grand jury transcripts and audio recordings from Mr. Ishkirat's case. Those materials reveal that AUSA A *once again* engaged in misconduct behind the closed doors of the grand jury room[4].

---

[4] Included under seal as Exhibit 1 is excerpts of the transcripts with footnotes denoting examples of alleged misconduct. Copies of the grand jury transcripts will be provided to the Court for in camera inspection.

Among other things, the transcripts reflect AUSA A: (1) repeatedly and improperly vouched for witness credibility and the strength of the government's case, (2) engaged in improper comments to grand jurors about her personal opinions regarding defendant's guilt, extrajudicial facts, and the strength of the government's case prior to deliberations,[5] (3) making improper comments to grand jurors and chilling other grand jurors from asking questions, (4), and the cultivation of personal relationships with grand jurors in a manner that risked influencing and undermining their independent judgment.[6]

While some of the misconduct was nuanced, some more blatant, viewed collectively, it demonstrates a sustained effort to improperly steer, influence, and shape grand jury decision-making rather than present evidence in a neutral and impartial manner allowing for a fair probable cause determination by the grand jury. Moreover, the misconduct is not isolated, rather, what was once hoped to be a one-off has become a much larger problem.

Dismissal with prejudice is therefore warranted based on this serious and pervasive misconduct by the U.S. Attorney's Office in this case and others. The misconduct identified here is not an isolated incident attributable to mistake or negligence. It reflects a recurring pattern that has now infected multiple prosecutions presented to the same grand jury by the same prosecutor. Lesser sanctions would neither remedy the prejudice suffered by Mr. Ishkirat nor adequately deter future abuses of the grand jury process. To protect the integrity of these proceedings and to curtail further governmental misconduct, this Court should dismiss the indictment with prejudice.

---

[5] Some conversations between AUSA A and the grand jury were audio recorded and not transcribed as they occurred after the formal presentation had ended and the court-reporter stopped typing.

[6] Defense counsel reserves the right to supplement upon receiving additional materials.

Alternatively, as will be detailed below, Mr. Ishkirat is making numerous discovery requests and asks for an evidentiary hearing.

## II.    Discussion

### A.  Legal Authority

The Fifth Amendment mandates that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. AMEND. V.  The Fifth Amendment "presupposes an investigative body acting independently of either prosecuting attorney or judge." *United States v. Williams*, 504 U.S. 36, 49 (1992). The grand jury accordingly "must be free to pursue its investigations [and return true bills] unhindered by external influence or supervision." *United States v. Dionisio*, 410 U.S. 1, 17 (1973).

Policing that principle, however, is difficult because the grand jury sits in secret, with no judge in the room, no defense advocate, and no contemporaneous check on the prosecutor (aside from other prosecutors). As the Third Circuit explained:

> [T]he prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants as well. For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

*United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979).

Grand jury secrecy requires prosecutors to act with the utmost integrity, honor, and decorum. A prosecutor is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all."

*Berger v. United States*, 295 U.S. 78, 88 (1935). Her duty, her obligation, before the grand jury is to "be scrupulously fair to all witnesses" and "not to inflame or otherwise improperly influence the jurors," "to preserve fairness, impartiality and lack of bias," and to never "act in a way that overlooks inherent prejudice to the person under criminal investigation." *United States v. DiGrazia*, 213 F. Supp. 232, 235 (N.D. Ill. 1963); *United States v. Gold*, 470 F. Supp. 1336, 1346 (N.D. Ill. 1979) (J.Leighton). See also U.S. Attorneys' Manual 9-11.010. Due to the secrecy of the proceedings, when these standards are breached and misconduct occurs, it is particularly devastating to the criminal justice system.

Misconduct is rooted in tactics aimed at manipulating an indictment. A "prosecutor should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury." *United States v. Gold*, 470 F. Supp. at 1351 (quoting Section 3.5(b) of the Standards, The Prosecution Function, adopted by the American Bar Association (1971)). Such tactics involve expressing personal opinions regarding the guilt of the accused (*United States v. Young*, 470 U.S. 1, 18 (1985)); vouching for the credibility of witnesses (*United States v. Robinson*, 485 U.S. 25, 33 n.5 (1988)); suggestion, insinuation, and assertions of personal knowledge about the accused (*Berger v. United States*, 295 U.S. at 88); presenting informal, unsworn testimony (*United States v. Hodge*, 496 F.2d 87, 88 (5th Cir. 1974); *United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *3 n.2 (W.D.N.Y. May 22, 2006)); inflaming the passions of the grand jurors (*United States v. DiGrazia*, 213 F. Supp. at 235; *United States v. Abbott Laboratories*, 369 F. Supp. 1396 (E.D.N.C. 1973)); depicting the accused as a bad person (*United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983)); developing an unnatural rapport with the grand jurors that leads to dependencies and risks manipulation (Fed. R. Crim. P. 6(e)(1), Advisory Committee Notes to

1979 Amendments; *United States v. Breslin*, 916 F. Supp. 438, 443 (E.D. Pa. 1996)); and misleading legal instructions and mischaracterizations of the facts (*United States v. Udziela*, 671 F.2d 995, 998 (7th Cir. 1982); *United States v. Cerullo*, 2007 WL 2462111, at *2 (S.D. Cal. Aug. 28, 2007). The cumulative effect of instances of misconduct is to render the process unconstitutional and dismissal of the indictment mandatory. *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979).

## B. The Indictment Should be Dismissed with Prejudice

This Court has the authority to dismiss the indictment with prejudice based on prosecutorial misconduct in the grand jury. *United States v. Anderson* 61 F.3d 1290, 1296 (7th Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-55 (1988). Prejudice occurs where prosecutorial misconduct during grand jury proceedings "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence." *Anderson*, 61 F.3d at 1296 (citing *Bank of Nova Scotia* 487 U.S. at 256.

The Third Circuit's warning in *Serubo* captures the prejudice Mr. *Ishkirat* has already suffered:

> [T]he handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

*Serubo*, 604 F.2d at 817.

Mr. Ishkirat has lived with the prejudice the Third Circuit described. He has lived under the weight of a federal indictment for nearly a year, and the reputational, financial, professional, and personal consequences that follow from being accused of burning down his father's business. Mr. Ishkirat was arrested after picking up a cake for his daughter's second birthday, he was jailed for

9

three days, and his business has sustained losses due to his inability to travel outside of the state of Minnesota.

As Chief Judge Kendall explained when dismissing an Indictment based on the prosecution's interference with the defendant's right to present a defense, the Court's supervisory authority provides ample authority to dismiss in order to curb misconduct:

> "The Court may dismiss an indictment on other grounds pursuant to its supervisory powers, such as when the government exhibits outrageous misconduct in prosecuting the indictment, causing prejudice to the defendant; such a dismissal is a prophylactic tool used to discourage future deliberate governmental impropriety." See *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir.1998) ("[A] court's supervisory power cannot be exercised to dismiss indictments for government misconduct absent a showing of prejudice to the defendants."); *United States v. Samango*, 607 F.2d 877, 884 (9th Cir.1979) (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978)) (internal quotation marks omitted) ("Under its inherent supervisory powers, a federal court is empowered to dismiss an indictment on the basis on governmental misconduct.")

*United States v. Linder*, 2013 WL 812382, at *30 (N.D. Ill. 2013).

However, "prejudice need not be shown when 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair.'" *Anderson*, 61 F.3d at 1296 n.4. Likewise, in *Bank of Nova Scotia v. United States*, the court left open an avenue for dismissal with prejudice; that is, a history of repeated prosecutorial misconduct. "Finally, we note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 259, n.9 (1988). Multiple cases, post-dating *Bank of Nova Scotia* recognize this as a possible basis for dismissal. See, e.g., *United States v. Smith*, 2022 WL 1053263 at *1 (S.D.N.Y. 2022) (citing *United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021) rev'd on other grounds) ("This Court may dismiss an

10

indictment for prosecutorial misconduct as "an extraordinary remedy ... pursuant to [its] supervisory power ... if the grand jury was misled or misinformed, or possibly if there is a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process."); *United States v. Howard*, CRIM.A. 12-1, 2014 WL 2429315, at *2 (E.D. La. May 29, 2014) (citing *Bank of Nova Scotia*, 487 U.S. at 259 ("A presumption of prejudice may be appropriate where, for example, there exists 'a history of prosecutorial misconduct, spanning several cases, that is so systematic and so pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment.'"); *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990); *United States v. Felton*, 755 F.Supp. 72, 74 (S.D.N.Y. 1991); But cf. *United States v. Walters*, 910 F.3d 11 (2d Cir. 2018).

Although dismissal with prejudice is rare, federal appellate courts have affirmed it as a sanction for prosecutorial misconduct in a range of contexts where the misconduct caused harm that no lesser remedy could undo. *See United States v. Chapman*, 524 F.3d 1073, 1085–87 (9th Cir. 2008) (affirming dismissal with prejudice as a sanction for "flagrant" prosecutorial misconduct involving the suppression of more than 650 pages of Brady and Giglio material); *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) (affirming dismissal with prejudice where the government's "reckless disregard" of its Brady obligations and the prejudice the defendants would suffer on retrial warranted "the extreme measure of dismissing the Indictment"); *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) (affirming dismissal with prejudice of indictment against thirteen defendants where the government's interference with defendants' Sixth Amendment right to counsel was such that "no other remedy would return defendants to the status quo ante").

Here, what is already known is that there is prosecutorial misconduct in this case and a history of prosecutorial misconduct in the Grand Jury spanning multiple cases. Dismissal is the only remedy that will protect this sacred institution.

## C. Alternative Discovery Requests and Evidentiary Hearing

The misconduct before the June 2024 grand jury was rampant enough to warrant significant worry. What is most shocking about the presentation in this case is that it is the tone of grand jury session- AUSA A's demeanor—the friendly back and forth coupled with improper personal opinions interjected about government witnesses, defendants, and the strength of the case. Seemingly more interested in having the grand jurors beat protest traffic than guide them in the performance of their solemn duty to act as a buffer between the government and the citizenry, AUSA A clearly crossed the line by interjecting opinions and cultivating an unnatural and improper relationship with the grand jury. And so it is abundantly clear, undersigned counsel lays no blame at the feet of the grand jurors. They, too, were harmed by such treatment as they deserved more from the federal government.

As the Supreme Court held in *Bank of Nova Scotia*, "we note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment." 487 U.S. at 259, fn 9. The Northern District of Illinois is facing said dilemma. To the extent this Court needs more evidence of misconduct, the only way to do so is to command the government to disclose materials related to the following items and issues and to order an evidentiary hearing:

- Production of any materials related to:

- For "attorneys' eyes only" every recording and transcript of cases presented by AUSA A to the June 2024 grand jury.

    - The cases presently known to the defense reveal a troubling and expanding pattern of misconduct. There is substantial reason to believe that the examples identified in this motion are not exhaustive and that additional instances of misconduct may be revealed through a broader review of the grand jury's proceedings. Moreover, they would reveal the alarming cultivation of rapport that is readily apparent from the transcripts and audio in this case. Moreover, it is clear from the quoted statement from the Rabbit case that there were prior conversations with the grand jury where she improperly claimed she was sure of a defendant's guilt.

- All recordings of the presentation of this matter to the June 2024 Special Grand Jury;
    - Defense counsel has not received all of the audio from each presentation.

- All the recordings and transcripts from the Ahmed cases listed above;

- When the U.S. Attorney's Office became aware that AUSA A was the subject of prosecutorial misconduct complaints, including, but not limited to any complaints made by other attorneys who accompanied AUSA A to the grand jury for any matter;

- When the U.S. Attorney's Office became aware of the grand jury issues associated with the Broadview Six and Ahmed cases;

- As to the Broadview Six, what decision-making process went into redacting portions of the grand jury transcripts;

- When the U.S. Attorney's Office determined it should review the grand jury transcripts in the Ahmed/Rabbit cases;

- When the U.S. Attorney's Office determined it should review the grand jury transcripts in this case;

- What information about the alleged misconduct in this case has been shared with other attorneys on other cases including but not limited the Ahmed cases;

- Which AUSAs, supervisors, and other office personnel were present, on notice, or consulted with respect to AUSA A's conduct before any grand jury, including in this case and the Ahmed and Rabbit cases;

- Whether and how the office responded to misconduct complaints concerning AUSA A in any June 2024 grand jury matters, and what supervisory or training measures, if any, were imposed;

13

- The name and case number of any matter that was resolved upon an allegation of grand jury misconduct against AUSA A; and

- All written communications emails, memoranda, internal review notes etc., within the U.S Attorney's concerning any of the questions and/or issues above and regarding AUSA A's conduct in grand jury proceedings regarding any case presented to a grand jury since 2020, including the June 2024 Special Grand Jury, including but not limited to *Rabbit*, *Ahmed I* and *II* and this case and including any communications relating to a review of those proceedings.

An evidentiary hearing is appropriate for several reasons. This motion challenges the specific grand jury presentation in this case and argues that the AUSA A's misconduct in vouching, cultivating rapport, offering opinions, etc., may very well lead to a finding that the misconduct is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment. To put a finer point on it, through her misconduct, AUSA A could have infected every case he/she presented to the June 2024 grand jury. The stakes are too high to require anything short of a full hearing on the scope of this misconduct.

### III.     Conclusion

Mr. Ishkirat respectfully requests the indictment against him be dismissed with prejudice because the grand jury misconduct was egregious and is clearly part of a pattern of misconduct that is rampant and spanning at least three cases. Alternatively, he requests that the Court order discovery be produced and the matter be set for hearing.

14

Respectfully Submitted,

s/ Damon M. Cheronis
**Damon M. Cheronis**

**Cheronis & Parente LLC**
140 S. Dearborn Street, Suite 404
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com

s/ Terrence P. LeFevour
**Terrence P. LeFevour**

**Law Offices of Terrence P. LeFevour**
33 N. Dearborn Street, Suite 1950
Chicago, IL 60602
(312) 782-5075
lefevourlaw@sbcglobal.net