UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 25 CR 562 |
| | ) | |
| ALLA ISHKIRAT, | ) | Judge Robert W. Gettleman |
| TAWFIK SALMAN, | ) | |
|    aka "Mike", | ) | |
| LARRY MONEYHAM, and | ) | |
| LONNIEL NELSON, JR., | ) | |
|    aka "Rudy" | ) | |

## UNOPPOSED MOTION TO DISMISS INDICTMENT WITH PREJUDICE

The United States of America, by and through ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully moves this Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss with prejudice the indictment as to all defendants, namely, defendants Alla Ishkirat, Tawfik Salman, a/k/a "Mike," Larry Moneyham, and Lonniel Nelson, Jr., a/k/a "Rudy." In support of this motion, the government states as follows:

1.     "The case law makes clear that because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Salley*, No. 19-cr-797-1, 2021 WL 2915119, at *3 (N.D. Ill. July 12, 2021) (Dow, J.) (citation modified).

2.     On September 11, 2025, defendants Ishkirat, Salman, Moneyham, and Nelson were each charged by indictment with one count of arson, in violation of 18 U.S.C. § 844(i).

3.     Rule 48(a) of the Federal Rules of Criminal Procedure provides in pertinent part that "[t]he government may, with leave of court, dismiss an indictment. . . ." The government

1

moves this Court pursuant to Rule 48(a) to dismiss the indictment with prejudice as to all four defendants.

4.      In the interests of justice and transparency, and given the judiciary's, defense bar's, and public's interest in better understanding allegations of irregularities occurring in certain grand jury matters in the Northern District of Illinois, last Thursday, June 18, 2026, upon the *ex parte* motion of the government, the Chief Judge of the Northern District of Illinois authorized the disclosure of matters occurring before the grand jury in this case. Having obtained permission from the Court to publicly disclose grand jury materials in this matter, the government states the following in support of this case's dismissal with prejudice:

This criminal case arises from a multi-year grand jury investigation numbered as 14 GJ 702. From a review of internal records, the investigation appears to have started as a financial fraud investigation in or around 2014, but the investigation later shifted its focus to an arson that was committed in 2018. This matter had been handled by numerous Assistant U.S. Attorneys who left the U.S. Attorney's Office but was ultimately reassigned in April 2021 to an experienced federal prosecutor, who charged the case in September 2025 as an arson under 18 U.S.C. § 844(i), which is subject to a 10-year statute of limitations.

Upon review of the proceedings before the grand jury in this matter involving the experienced federal prosecutor reassigned the case in 2021, the government discovered serious irregularities in the grand jury presentations, as described in more detail below. The U.S. Attorney and the U.S. Attorney's Office do not condone those irregularities in the grand jury presentations, which should not have happened under any circumstances. That conduct includes, but is not limited to, *ex parte* communications between the prosecutor who charged this case and members of the grand jury who returned the indictment. This conduct occurred on July 17, 2025, prior to

the indictment being returned on September 11, 2025. During the experienced prosecutor's *ex parte* contact with grand jurors, which is believed to have taken place without a court reporter present because the contact is not contained in any transcript, the prosecutor can be heard stating,[1] in reference to a video, that she "can prove this case." The prosecutor also told grand jurors as part of this exchange "we don't catch the smart ones," "most of them aren't as smart as they think," and "the white-collar guys think they are the smartest in the world." A grand juror also appeared to reference the then-putative defendants in this case by asking, "what have they been doing for the last four years, these guys, are they free?" The entirety of the prosecutor's response cannot be clearly heard but includes "yes," "lots of things came up," "I had other cases," and "I had trials." When a grand juror asked, "do they think they are off like scot-free?" the prosecutor responded, "the ones that testified know they are not" and "Alla probably does" followed by a reference to the name of a non-defendant. At the end of the *ex parte* contact, the prosecutor can also be heard referencing press reporting regarding another matter the prosecutor handled before this same grand jury, namely, 21 GJ 402, which upon indictment was docketed as *United States v. Ahmed et al.*, 25 CR 321 (Coleman, J.), (commonly referred to as "Loretto II").

5.      To be sure, even though the government does not condone the conduct at issue here, given the law, the government could certainly litigate the propriety of dismissing this indictment with prejudice in the face of the prosecutor's conduct in the grand jury as described immediately above. That's because "[a] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *United States v. Brooks*, 125 F.3d 484, 497 (7th Cir. 1997) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)). Indeed, the law is such that "[a]ssuming solely for the purposes of argument that the government

---

[1] Transcriptions are unofficial and based on the U.S. Attorney's Office's review of the operative portion of the grand jury recording in this matter.

presented evidence that it knew to be inaccurate, the district court could dismiss the indictment 'only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.'" *United States v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2005) (quoting *Brooks*, 125 F.3d at 497); *see also Bank of Nova Scotia*, 487 U.S. at 256 (holding that a district court may not invoke its supervisory power to dismiss an indictment because of non-constitutional errors in grand jury proceedings unless the errors prejudiced the defendants); *United States v. Geisler*, 143 F.3d 1070, 1072 (7th Cir. 1998) (applying *Brooks* and *Bank of Nova Scotia* to affirm conviction despite alleged irregularities in grand jury proceedings).

6.      Indeed, under Supreme Court and Seventh Circuit precedent, not even grossly extreme misconduct or criminal conduct in the grand jury would warrant dismissal of an indictment absent a showing of prejudice by the defendants. *Vincent*, 416 F.3d at 602 ("[W]here perjured testimony supporting an indictment is discovered before trial the government has the option of either voluntarily withdrawing the tainted indictment and seeking a new one before the grand jury when it reconvenes, unless it is already sitting, or of appearing with defense counsel before the district court for an in camera inspection of the grand jury transcripts for a determination whether other, sufficient evidence exists to support the indictment. If other, sufficient evidence is present so that the grand jury may have indicted without giving any weight to the perjured testimony, the indictment cannot be challenged on the basis of the perjury." (quoting *United States v. Udziela*, 671 F.2d 995, 1002 (7th Cir. 1982)); *id.* (holding that under Supreme Court precedent, "the dismissal of an indictment without a showing of prejudice" is not permitted); *United States v. Lamantia*, 59 F.3d 705, 707-09 (7th Cir. 1995) (based upon an appeal filed by the government, vacating a district court's decision to dismiss an indictment because a procedural deficiency in the

4

indictment does not prejudice the defendant or undermine the structural integrity of the grand jury even in cases where one of the grand jurors was engaged in "unauthorized disclosures and attempts to secure payments in exchange for [grand jury] information").

7. But, notwithstanding this and other case law and the opportunity to litigate, the U.S. Attorney promptly made the decision to dismiss this indictment with prejudice soon after he was made aware of the July 2025 grand jury irregularities, which was on or about June 10, 2026. The U.S. Attorney's decision to dismiss was informed by, among other things, the grand jury irregularities of which he had just been made aware as well as the old age of the conduct, which had been under investigation for many years and looming over the defendants during that time. The U.S. Attorney's decision to dismiss with prejudice was also made before the defense filed their motion to dismiss on June 18, 2026. Indeed, the defense was able to file its motion to dismiss because, when the government first learned of the irregularities, it promptly ordered additional grand jury information and then conducted a careful review of the transcripts, minutes, and available audio to ascertain the scope of the grand jury irregularities. Upon prompt completion of its review, the government immediately and proactively turned over the relevant grand jury materials to the defense.

8. Furthermore, because the U.S. Attorney (a) has been proactively working on a **Phase II Remediation Plan**[2] that contemplates the proactive review of a voluminous category of

---

[2] On May 26, 2026, after learning of grand jury irregularities in another case, namely, *United States v. Rabbitt et al.*, 25 CR 693 (Perry, J.), the U.S. Attorney formulated and implemented comprehensive and sweeping reforms and process improvements to the U.S. Attorney's Office's grand jury practices and to the treatment of grand jury materials for discovery purposes, referred to here as the **Phase I Remediation Plan**, which went into effect immediately. The reforms and process improvements were designed to address root-cause issues, create bright-line rules that remove discretion and judgment calls from Assistant U.S. Attorneys, and streamline and simplify the decision-making and disclosure processes for grand jury materials. Because the internal reforms and process improvements established clear and unequivocal rules and expectations for Assistant U.S. Attorneys in the Northern District of Illinois related to grand jury disclosures and the timing of those disclosures, the instituted changes were created with the

cases to (i) ensure the absence of grand jury irregularities in the cases charged by indictment by the U.S. Attorney's Office for the Northern District of Illinois; (ii) endeavor to restore the judiciary's, defense bar's, and public's confidence in the grand jury practices and proceedings of the District; and (iii) ensure that Assistant U.S. Attorneys who have appeared before the grand jury in the Northern District of Illinois during the relevant time frame and/or as otherwise being defined, have acted in accordance with law and consistent with the highest ethical standards demanded of those who represent the United States and the people of this District; and (b) wanted a transparent and public accounting of the conduct in the grand jury giving rise to the government moving to dismiss the indictment in this case, which in turn required the government to move *ex parte* to obtain authority from the Chief Judge to publicly disclose grand jury materials, the government's filing is being made following the defense's motion to dismiss. But to be clear: the decision to dismiss both predates, and is independent of, the defense's motion to dismiss filed on June 18, 2026.

9. Although the U.S. Attorney has formulated and is finalizing a comprehensive **Phase II Remediation Plan**[3] that he anticipates will be launched in the near future, for now, the

---

purpose of being deeply curative and to put to rest once and for all any divergent practices that may have existed across the U.S. Attorney's Office, including from one Assistant U.S. Attorney to another as well as from one generation to the next. On May 27, 2026, the U.S. Attorney's Office announced the implementation of its reforms to the public, although it did not externally specify those internal reforms or process improvements. *See* "United States Attorney Andrew S. Boutros Announces Sweeping Reforms to Internal Grand Jury Practices and Disclosures; Remediation Plan Includes Most Substantial and Significant Changes in Decades," available here: https://www.justice.gov/usao-ndil/pr/united-states-attorney-andrew-s-boutros-announces-sweeping-reforms-internal-grand-jury. Although some outside the Department may have received access to those internal reforms, the specifics of those reforms have not yet been made public. The U.S. Attorney may elect to release that information officially at a different time.

[3] In addition, on June 1, 2026, as part of his root cause analysis, the U.S. Attorney implemented a new Office-wide policy regarding transcripts, such as grand jury transcripts, the Office submits to the Court. Under the new policy, which went into effect immediately, whenever the Court asks to see certain parts of transcripts, whether *ex parte* or otherwise, Assistant U.S. Attorneys are either to (1) highlight the relevant portions of those transcripts for the convenience of the Court, or (2) neither highlight nor redact but rather

government hereby states that as part of that **Phase II Remediation Plan** and given what appears to be a high error rate in this experienced prosecutor's grand jury presentations, the government is, and will be, conducting an individualized review and assessment of all available grand jury minutes of the prosecutor who indicted this case from the time when the prosecutor joined the U.S. Attorney's Office in 2007 to the present and in those cases where the prosecutor served as lead counsel. Conducting this review will be consistent with the U.S. Attorney's **Phase II Remediation Plan**, which when finalized and launched will include a review that ensures that Assistant U.S. Attorneys who have appeared before the grand jury in the Northern District of Illinois during the relevant time frame and/or as otherwise being defined, have acted in accordance with law and consistent with the highest ethical standards.[4]

10.     Although substantial work is involved in the government's ongoing process of working through its records as well as court records to identify all cases that will be subject to review and assessment for the experienced prosecutor, the government estimates that this process will likely lead to the review of grand jury minutes in more than 100 grand jury cases the experienced prosecutor indicted in the grand jury since 2007. In addition, the volume of grand jury minutes in the larger **Phase II Remediation Plan** review and assessment that is being defined is comfortably expected to be in the four figures, but that determination is still underway and is

---

just submit the transcripts "as they are." Under no  circumstances are prosecutors to redact what they understand or perceive as the irrelevant portions of the transcripts submitted to the Court for review. That way the Court never receives redacted transcripts. In addition, if the materials are being publicly filed or produced to the defense, federal prosecutors may still redact, as needed, for witness security, personal identifying information, or other similar considerations. However, submissions directly to the Court are not to be redacted and should be either highlighted for the Court's convenience or submitted "as they are."

[4] If, as part of this review, there are Assistant U.S. Attorneys who are identified as having a high error rate of irregularities in the grand jury and/or otherwise, the U.S. Attorney's Office may decide to conduct a more comprehensive review of their cases as well.

subject to continued refinement as is the process by which those minutes will be reviewed, including the personnel who will conduct this significant undertaking.

11.     The U.S. Attorney has authorized this review for the experienced prosecutor's matters, which is in the early stages, even though the vast majority of those cases have been finally adjudicated. In finally adjudicated cases, under U.S. Supreme Court and Seventh Circuit precedent, errors in the grand jury—especially ones that are not constitutional in nature—are not subject to remedy once a case has been finally resolved by guilty plea[5] or conviction at trial.[6] Indeed, the Seventh Circuit has gone so far as to state that the "authoritative determination of guilt establishes that any defects in the [grand jury] procedure did not lead to the accusation of an innocent person and shows that obtaining a new indictment would be a charade." *United States v. Daniels*, 848 F.2d 758, 759 (7th Cir. 1988) (stating further that Supreme Court precedent holds "that once a

---

[5] *See Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975) ("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established"); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *United States v. Lockett*, 859 F.3d 425, 427 (7th Cir. 2017) ("In general, 'an unconditional plea of guilty operates as a waiver of all formal defects in the proceedings.'" (quoting *Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006)); *Pope v. Perdue*, No. 16-4176, 2017 WL 11645256, at *1 (7th Cir. Aug. 21, 2017) ("We agree with the district court's reasoning and would add that when a defendant pleads guilty he waives his complaints about errors in an indictment."); *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) ("An unconditional guilty plea is not ordinarily considered a forfeiture. It is a knowing, voluntary relinquishment of the defendant's right to go to trial and contest the factual basis of an indictment.").

[6] *See United States v. Mechanik*, 475 U.S. 66, 72-73 (1986) ("We hold only that however diligent the defendants may have been in seeking to discover the basis for the claimed violation of Rule 6(d), the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings."); *Vincent*, 416 F.3d at 602 (holding that "even if the district court would have been warranted under [Seventh Circuit precedent] in dismissing the indictment before trial," the Seventh Circuit has "no authority to reverse its refusal to do so given the petit jury's conviction").

defendant's guilt has been established beyond a reasonable doubt, he may not raise objections to those portions of the grand jury's procedure that are designed to prevent the accusation of innocent persons"). Stated differently, "to the extent a resolution of factual guilt or innocence blots out a challenge to the procedures used before a grand jury, the defendants have lost their ability to pursue these claims already. They pleaded guilty, and a plea is as effective as a jury verdict in establishing factual guilt." *Id.* at 759.

WHEREFORE, (a) because the instant case has not been finally adjudicated and is still in the pre-guilt phase of criminal proceedings; (b) given that the government is interested in affirming that the presumption of regularity to which it is entitled under the law should not be shaken; (c) given also that general calls for the abandonment of the presumption of regularity in cases where there were no irregularities or other conduct that caused prejudice to defendants would be disruptive and harmful to the administration of justice; (d) given further that the government is electing to proceed in such a fashion in this matter to "allow calmer reflection and . . . a restoration of the cordial and mutually respectful relations between bench and prosecutor that are vital to the administration of justice," *In re United States*, 398 F.3d 615, 620 (7th Cir. 2005), and (e) given the old age of the conduct, which had been under investigation for many years and looming over the defendants during that time, the government hereby states that in the exercise of its prosecutorial discretion and in the interests of Justice, the government respectfully moves this Court to dismiss the indictment as to all defendants with prejudice.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

/s/ *Andrew S. Boutros*

Dated: June 22, 2026